No. 3347.—James Brewer v. E. J. Gay et al.

He who alleges simulation must prove it.

Under an allegation of simulation merely, of a mortgage, evidence that it is fraudulent, but real, will not be admitted if objected to.

A. D. Kelly granted a mortgage in favor of Dr. J. C. Patrick, or any future holder of certain notes which he had given, on real estate in the city of New Orleans to secure their payment. The mortgaged property was afterward sold under judicial process by other and subsequent mortgage creditors. This suit was then brought by the other and subsequent mortgage creditors to cancel the mortgage given in favor of Patrick or any future holder or holders of the notes, and to have the proceeds applied to the payment of their mortgages by preference, on the ground that the mortgage given in favor of Patrick was simulated and fictitious. Held—That the mortgage creditors having alleged merely that the mortgage in favor of Patrick was simulated, and having failed to establish the simulation by proof, they could not be permitted to show that it was fraudulent, set it aside on that ground, and claim the proceeds of the sale for the benefit of the junior mortgages.

APPEAL from the Seventh District Court, parish of Orleans. *Collens, J. Miles Taylor, J. S. Whitaker* and *J. Caldwell Pierce*, for plaintiff. *Race, Foster & E. T. Merrick*, for E. J. Gay, defendant, and *Lea, Finney & Miller*, for the other defendants.

Howe, J. On the fourth of November, 1865, A. D. Kelly, of New Orleans, by public act granted in favor of Dr. J. C. Patrick, of West Baton Rouge, or any future holder or holders of certain notes therein described, a mortgage on certain real estate in the city of New Orleans. The notes were forty-eight in number, and their aggregate amount $89,600. The object of the mortgage as recited in the act was to secure to Patrick a debt due him by Kelly for that sum.

The mortgage was recorded November 6, 1865, and about the same time the notes were delivered as follows: to the amount of about $30,000 to T. L. Bayne, Esq., for purposes to be hereinafter mentioned, and to the amount of about $59,000 to the defendants, A. H. Wallace, J. H. Wallace, A. H. & T. H. Wallace, D. H. Gordon, and Kelly, Tackett & Ford, respectively, as collateral security for debts due them by A. D. Kelly & Co.

Of the notes delivered to Mr. Bayne, one was in February, 1867, transferred to the defendant, the Canal Bank; and six in November, 1866, to the firm of William Edwards & Co., and are now held by the defendant, E. J. Gay, a member of that firm.

The plaintiff obtained judgment against A. D. Kelly & Co. May 10, 1866, and caused it to be recorded June 7, 1866. As a judicial mortgagee, he commenced this action December 31, 1869, praying to be decreed a preference over the defendants above mentioned (the property having in the meantime been sold under judicial process) on the grounds that this mortgage, of November 4, 1865, was a mere simulation, that it was made to cover and shield the property of A. D. Kelly from the pursuit of his creditors, that the defendants acquired possession of the notes held by them after plaintiff's judicial mortgage had arisen, and that therefore their mortgage claim was "null and void" as to him.

There was judgment in favor of plaintiff as to all the defendants except the Canal Bank and E. J. Gay. The mortgage of the bank was recognized for $3000 and interest, and that of E. J. Gay for $4960 and interest. All parties have either appealed or by answer as appellees asked for an amendment of the judgment.

An examination of the very voluminous record in this case will be simplified by attending to the exact issue raised by the pleadings. The demand of the plaintiff is founded upon the allegation that the mortgage to Patrick of November 4, 1865, was a simulation, a vain shadow cast by Kelly on his property for his own purposes merely, to shroud it from the pursuit of his creditors. There is not an allegation that the mortgage was real but fraudulent; that having an actual existence it was liable to be annulled as giving an unlawful preference to creditors. We may therefore properly dismiss from consideration all the testimony in reference to illegal preference, the defendants having duly objected to its reception for such purpose; and the main question in the case which is left is, not whether the mortgage existed for a fraudulent purpose, but whether it had any existence at all.

The plaintiff who alleges simulation must prove it. So far from proving it in this case, the record shows that the mortgage attacked had a real existence, though *the debt secured was not precisely what it was described* to be in the public act. The object of the parties seems to have been to create a series of notes secured by mortgage, and to use these notes for two purposes, *first*, to secure Dr. Patrick, who had loaned to A. D. Kelly & Co. his notes for large sums, which notes A. D. Kelly & Co. had pledged at the banks as collateral, and on which Patrick was primarily liable as maker, and *second*, to secure a number of creditors of A. D. Kelly & Co. in respect to their matured claims, whose validity is not disputed.

The portion of the notes designed to secure Patrick were delivered to Mr. Bayne, to be held by him in accordance with this plan. He delivered one of $3333 33 to the defendant, the Canal Bank, for the purpose of taking up a note of $4000 made by Patrick, and these pledged by Kelly & Co. He delivered six, amounting to $7666 66, to William Edwards & Co., as collateral to a loan of $4960 in cash, used also to take up a note held by the Bank of Louisiana, which had been made by Patrick and pledged by Kelly & Co. These notes are held by E. J. Gay, one of the defendants, a partner of Edwards & Co.

It seems clear (the question of illegal preference being eliminated) that the moment the notes were delivered to Bayne the mortgage had a legal existence, the *vinculum juris* was complete. This occurred about November 6, 1865. The notes were negotiable, were indorsed in blank, and the mortgage was made in favor of any future holder. The notes did not perish in the hands of Bayne, nor did the mortgage.

Brewer v. Gay et al.

He delivered the notes to the Canal Bank and Gay (Edwards & Co.) for a valuable consideration, and we see no reason why they should not enforce them and enforce their accessary mortgage. 21 An. 3; 22 An. 285.

Nor do we see why they should not enforce them in full. Kelly does not object, nor Patrick's estate, nor Bayne as agent, and neither is made a party to this suit. There are no equities between maker and payees. To say that these holders of collaterals should not be permitted to collect more than they have advanced or agreed to take would be to deal too summarily with the rights of parties not before the court.

The rights of the other defendants, the Wallaces, Gordon, and Kelly, Tackett and Ford seem equally clear. As to them Dr. Patrick was a nominal mortgagee, but the mortgage was none the less valid under the facts above recited as to the plaintiff. The notes were transferable by mere delivery, and the mortgage was made not only in favor of Patrick, but of any future holder or holders of these notes. Within a day or two, certainly within the month of November, 1865, the notes to the extent of about $51,000 were delivered to the defendants, the Wallaces and others, lastly above named, as collateral security for valid existing debts. The *vinculum juris* was complete, and we do not think that the plaintiff, acquiring his rights as judicial mortgagee seven months later, can legally complain. Swift *v.* Tyson, 16 Peters 20; Succession of Dolhonde, 21 An. 3; D'Meza *v.* Generes, 22 An. 285.

It is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of defendants with costs in both courts.